## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **DARYL HEARD** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:03CV793CAS/MLM** |
| | ) | |
| **MIKE KEMNA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Daryl Heard ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 4. Respondent Mike Kemna filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc.11. Petitioner filed a Traverse and Additional Arguments. Doc. 15, Doc. 17. Petitioner is currently incarcerated at the Crossroads Correctional Center. Therefore, Mike Kemna ("Respondent"), as the superintendent of that institution, is the proper party Respondent. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 7.

## I.
## BACKGROUND

On May 24, 1999, by substitute information in lieu of indictment, Petitioner was charged with the class B felony of attempt to commit the offense of statutory sodomy first degree, in violation of Mo. Rev. Stat. § 564.011, in that on January 14, 1999, in the City of St. Louis, Petitioner put a knife to Q.B.'s throat, gagged him, told him to lie down, and pulled his pants zipper down, and that such conduct was a substantial step toward the commission of the crime of statutory sodomy first degree

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and was done for the purpose of committing statutory sodomy first degree. Resp. Ex. B at 19. Petitioner was charged as a prior offender pursuant to Mo. Rev. Stat. § 558.016 in that he had been convicted of a felony. He was also charged as a persistent sexual offender in that he was convicted of sodomy on November 10, 1994. Id. at 19-20.

Petitioner waived his right to a jury trial and his case was heard by the trial court on December 7, 1999. Resp. Ex. A, Trial Transcript ("Tr.") at 4. Pursuant to an agreement between Petitioner, who was represented by counsel, and the prosecution, Petitioner's case was submitted on the police report. Id. at 9. No other evidence was considered by the court. The Missouri appellate court summarized the police reports as follows:

> On January 14, 1999, [Petitioner] approached three boys, Q.B. [ ] age eleven, his brother, and a friend, and offered them ten dollars each to help him find his wallet in Union Station. Q.B.'s brother and friend were directed to check the arcade and rest rooms at Union Station. [Petitioner] and Q.B. went into the men's restroom at the Hard Rock Café where [Petitioner] asked Q.B. to look for his wallet in the trash can in the back stall of the restroom.

> Q.B. told police he felt [Petitioner] touch his buttocks through his clothing and when Q.B. turned around, [Petitioner] put a knife to his throat and told him if he screamed [Petitioner] would kill him. [Petitioner] took off his tie, gagged Q.B., and told him to lie down on the floor. Q.B. then told police he heard [Petitioner] unzip his pants. Q.B. heard someone else come into the restroom, and at that time he pulled the tie off of his mouth, crawled under the stall, and started screaming that [Petitioner] had tried to rape him.

> [Petitioner] left the restroom and fled the restaurant. Some restaurant patrons and employees chased him down Market Street and ultimately, [Petitioner] was apprehended. After he was arrested, [Petitioner] denied any involvement in the incident at the Hard Rock Café, claiming he was running to catch a bus. Q.B., as well as other witnesses, identified [Petitioner] as the man who fled the Hard Rock Café. After police advised him of his Miranda rights, [Petitioner] admitted that he was a convicted sex offender and stated he would not be stupid enough to commit the offense of which he was accused.

Resp. Ex. F at 1-2.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The trial court found Petitioner guilty as charged and found that he was a persistent sexual offender subject to an extended term of imprisonment under Mov Rev. Stat. § § 558.018 and 557.036. Resp. Ex. A at 17-18. The court sentenced Petitioner to thirty years imprisonment which sentence was to be served without probation or parole. The court noted that the sentence imposed was the minimum sentence it could impose pursuant to the law. Id. at 23.

Petitioner filed a direct appeal in which he raised the following issue: Petitioner was deprived of his due process rights to a fair trial because the State did not establish beyond a reasonable doubt that Petitioner committed the crime of attempted sodomy first degree because the State failed to establish that Petitioner unzipped the pants worn by Q.B. Resp. Ex. D. On March 20, 2001, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. F.

Petitioner filed a pro-se post-conviction relief motion. Resp. Ex. G at 2. The court appointed counsel who filed an Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing. Id. at 16. The motion court denied Petitioner's request for post-conviction relief. Id. 36. On February 6, 2002, Petitioner appealed the decision of the motion court denying him post-conviction relief. In his appeal Petitioner raised the following issue: the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair and impartial jury, confrontation, cross-examination, summation, and a fair trial by failing to determine that Petitioner's stipulation to submit his criminal case on the basis of police reports was knowing and voluntary prior to accepting Petitioner's waiver of a jury trial. Resp. Ex. H. On May 22, 2002, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. J.

Petitioner filed his § 2254 Petition with this court on November 21, 2002. In his Petition, Petitioner raises the following issues:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(1)     The trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair and impartial jury, confrontation, cross-examination, summation, and a fair trial by failing to determine that Petitioner's stipulation to submit his criminal case on the basis of police reports was knowing and voluntary prior to accepting Petitioner's waiver of a jury trial;

(2)     Petitioner was denied due process because the trial court failed to establish beyond a reasonable doubt that Petitioner committed the crime of attempted statutory sodomy first degree by unzipping the pants of Q.B;

(3)     Petitioner was denied due process because the State failed to establish beyond a reasonable doubt that Petitioner committed the crime of statutory sodomy by using a knife when no knife was ever found or recovered;

(4)     Petitioner was denied effective assistance of counsel because his direct appeal counsel failed to raise the issue that the State failed to establish beyond a reasonable doubt that Petitioner committed the crime of attempted statutory sodomy by using a knife since no knife was recovered;

(5)     Petitioner was denied effective assistance of counsel because his direct appeal counsel "failed to raise under the sufficiency of evidence that a knife was ever used in the alleged crime";

(6)     Petitioner was denied effective assistance of counsel because his direct appeal counsel failed to raise the issue that "the sexual predator law did not exist when Petitioner was convicted of a prior sexual offense in 1992";

(7)     Petitioner's rights were violated when the trial court allowed Petitioner to be classified as a persistent sexual offender due to a previous sexual offense in 1992 since the law regarding persistent sexual offenders did not exist in 1992;

(8)     Petitioner's rights were violated when the trial court allowed Petitioner to be classified as a persistent sexual offender using his previous sexual offense because Petitioner was convicted of sodomy and in1992 there was no such crime as sodomy;

(9)     Petitioner was denied effective assistance of counsel when his direct appeal counsel failed to raise the issue that Petitioner did not receive the required hearing under Mo. Rev. Stat. § 558.021 before he was classified as a persistent sexual offender.[1]

---

[1]     The transcript of the proceedings before the trial court establishes that the trial court did conduct a hearing pursuant to Mo. Rev. Stat. § 558.021 upon finding that Petitioner is a

4

Doc. 4 at 1-5.

## II.
## EXHAUSTION, DEFAULT, and TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or

persistent sexual offender. Resp. Ex. A at 16-17, 20-24. Thus, were the court to consider Petitioner's Ground 9, the court would find it is without merit.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murry v. Carrier, 477 US 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 298 (1995)). A habeas petitioner who wishes to have a procedurally defaulted claim considered on its merits "'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing Sawyer v. Whitley, 505 U.S. 333 (1992)). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94. In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).

It has been held that "novel circumstances and arguments" may constitute cause for failing to excuse procedural default. In Reed v. Ross, 468 U.S. 1 (1984), "the Supreme Court recognized

that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." McKinnon, 921 at 833 (citing Reed, 468 U.S. at 16). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Ziner v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. Id. at 405.

In Duncan v Walker, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." See e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-19 (1982). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Duncan, 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." The Court in Duncan further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. 533 U.S. at 180. Thus, "'strict

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in Duncan, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2254(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

Petitioner did not raise the issues of Grounds 3-9 in either his direct appeal or the appeal of his post-conviction relief motion. Petitioner agrees that Respondent correctly states the relevant procedurally history. Doc. 15 at 2. The court finds, therefore, in agreement with Respondent, that Petitioner has procedurally defaulted Grounds 3-9.

As stated above, a habeas petitioner who procedurally defaults grounds for relief may nonetheless have the court consider such grounds if he can establish cause and prejudice. Petitioner concedes that he cannot establish cause and prejudice to excuse his procedural default. Doc. 15 at 2. Petitioner contends, however, that based on Coleman he has established the fundamental miscarriage of justice exception to procedural default in regard to Grounds 5-9 because these grounds involve the application of ex post facto laws to him.[2] In particular, Petitioner argues that the trial

---

[2] Petitioner does not address this argument to his procedural default of Grounds 3-4.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

court erred and violated firmly established federal law when it sentenced him as a prior and persistent sexual offender based on his 1992 criminal conviction which was allegedly for the crime of sodomy. Doc. 15 at 4-5. He further contends that the crime of sodomy did not exist at the time of his previous conviction and that he was, therefore, not convicted of this crime. He also argues that "the newly enacted 'sodomy' statute was different from [his] prior 1992 conviction." Doc. 15 at 7.

In Coleman, however, upon finding that the habeas petitioner's procedural default should be excused, the Court considered that the petitioner "did not 'understandingly and knowingly' forgo the privilege of state collateral appeal." 501 U.S. at 759. Significantly, before the trial court Petitioner's counsel argued that the court incorrectly determined that Petitioner was a persistent offender. Resp. Ex. A at 20-21. In particular, counsel argued that Petitioner was convicted of sodomy in 1992; that there was no such crime of sodomy at that time nor at the time of Petitioner's current sentencing; and that, therefore, application of the sexual predator law is an ex post facto application of the law. Resp. Ex. A at 20. Upon trial counsel's objecting to the application of the persistent offender statute to Petitioner the trial court made it clear to Petitioner that his argument could properly be made on appeal.[3] Resp. Ex. A at 23-24. Petitioner failed to do so.[4] Because Petitioner clearly had knowledge

---

[3] The trial court addressed Petitioner as follows: "When you have heard us speak of [the issue of the constitutionality of application of the persistent offender statute to Petitioner] being addressed in another forum, that forum quite frankly would be the appellate process." Resp. Ex. A at 24.

Also, upon failing to find merit in counsel's argument that the Petitioner should not have been found to be a persistent offender, the trial court stated that it felt that it was bound to find Petitioner a persistent sexual offender under Mo. Rev. Stat. § 558,018 based on the evidence before the court and based on the court's reading of that statute. The trial court further stated that "subsection 255.018 defines what a persistent sexual offender is and that statute says a persistent sexual offender is one who has previously pleaded guilty." Resp. Ex. A at 21. The trial court further stated that it disagreed with Petitioner's counsel that sodomy was not a crime in 1992. Resp. Ex. A at 21-22. The court continued to state as follows: "I must follow the law as given to me by the legislature on prior

of his right to appeal he cannot claim a fundamental miscarriage of justice. See Coleman, 501 U.S. at 759. The court finds that Petitioner has not established cause and prejudice to excuse his procedural default of Grounds 3-9.[5] As such, the court further finds that Grounds 3-9 should be dismissed.

Respondent also argues that Petitioner's § 2254 Petition for habeas relief should be denied because it is untimely. The limitation period of § 2254(d)(1) runs from the latest of:

---

cases and I have - - in some situations [ ] absolutely no discretion. Other situations I do have some. ... [S]ubsection 3 of that provision says that the term of imprisonment for one found to be a persistent sexual offender shall be not less than thirty years. To me a clear reading of that statute imposes an obligation and limits my discretion to whether thirty years or more, but not less than thirty years. Resp. Ex. A at 22-23.

Upon rejecting the argument that the persistent offender statute should not be applied to Petitioner the State trial court was relying on its interpretation of State law. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).

[4]     "'Winnowing' of which issues to raise on appeal is a "hallmark of effective advocacy;' counsel is not required to raise every conceivable issue on appeal." Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996) (internal citation omitted).

[5]     To the extent that Petitioner's § 2254 Petition can be interpreted to suggest that he is actually innocent because the knife was never found, the court notes not only could Petitioner have presented this argument at trial but that the absence of the knife does not establish his innocence. Thus, Petitioner cannot show by clear and convincing evidence that he is innocent. At most he makes a bare unsupported assertion of innocence which is insufficient to excuse procedural default. Schlup v. Delo, 513 U.S. 298, 316 (1995); Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997); McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992 ).

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2254(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period. Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000). While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending. Id. "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Berry v. Ault, 312 F.3d 948, 950 (8th Cir. 2002)(citing Peterson, 200 F.3d at 1203). It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)).

United States Supreme Court Rule 13 provides that "a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of judgment." A state court conviction

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

becomes final 90 days after the denial of discretionary review by the highest state court. <u>Peterson</u>, 200 F.3d at 1204 (8th Cir. 2000) ("[O]ne-year limitations period for filing habeas petition was tolled while petitioner sought post-conviction relief in state court, from date when petitioner filed his motion for post-conviction relief up until date when Missouri Court of Appeals affirmed the denial of post-conviction relief."). The Eighth Circuit explained, in <u>Williams v. Bruton</u>, 299 F.2d 982, 983-84 (8th Cir. 2002), as follows:

> We stated in [<u>Peterson v. Gammon</u>, 200 F.3d 1202 (8th Cir.2000)] that a post-conviction application remains "pending" for the entire period during which a notice of appeal "would be timely, assuming such a notice was in fact filed." <u>See</u> <u>id.</u> at 1205. ... <u>Peterson</u> did not say that the statute of limitations was tolled only if the petitioner filed a timely appeal; it said that it was tolled if he or she did so. Although we have not answered the question directly, those circuit courts that have addressed it have concluded that the application is "pending" (and thus the limitations period is tolled) during the appeal period, even if the petitioner does not appeal. <u>See</u> <u>Gibson v. Klinger</u>, 232 F.3d 799, 803-04 & n. 1 (10th Cir.2000); <u>Swartz v. Meyers</u>, 204 F.3d 417, 420-24 (3d Cir.2000).

Because the court has found that Petitioner has procedurally defaulted Grounds 3-9 the court need not determine whether these grounds are time barred. In regard to Grounds 1 and 2, the court notes that Respondent correctly states that between the time Petitioner's direct appeal became final and the time Petitioner filed his post-conviction relief motion, June 27, 2001, the limitation period of § 2244(d)(1) was not tolled. <u>See</u> <u>Berry</u>, 312 F.3d at 950. The Missouri appellate court denied Petitioner's direct appeal on March 20, 2001. Pursuant to Missouri Rule 83.02 he had fifteen days to file for transfer to the Missouri Supreme Court. Under Rule 30.26 he had fifteen days to file for rehearing with the appellate court. Petitioner failed to avail himself of any of these procedures.

Arguably, for the eighty-three day period between April 4, 2001, the date his direct appeal would have been final under State law, and June 27, 2002, the date he filed his pro-se post-conviction relief motion, the 1-year period of § 2244(d)(2) was not tolled. The Missouri appellate court denied

the appeal of Petitioner's post-conviction relief motion on May 28, 2002. Petitioner had ninety days after the Missouri appellate court denied this appeal to file for certiorari with the United States Supreme Court. Assuming, that the statute did not commence to run until August 28, 2002, and subtracting the eighty-three days, Petitioner's § 2254 Petition was due in this court by approximately June 4, 2003. Petitioner's Petition was filed on June 12, 2003. Therefore, Petitioner's Petition was not timely filed. In the interests of justice, however, considering the closeness of the calculation of the applicable tolling period, the court will alternatively consider on their merits Petitioner's Grounds 1 and 2.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 363 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme]Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Williams, 529 U.S. at 413. See also Perry v. Johnson, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in Perry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11).  The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue."  Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness."  Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001).  The state court's factual determinations  "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001).  For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not

16

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

enjoy support in the record. 28 U.S.C. § 2254(e)(1); <u>Boyd v. Minnesota</u>, 274 F.3d 497, 501 n. 4 (8th Cir.2001).”), <u>cert. denied</u>, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)**.**

## IV.
## DISCUSSION

**Ground 1 - The trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair and impartial jury, confrontation, cross-examination, summation and a fair trial by failing to determine that Petitioner's stipulation to submit his criminal case on the basis of police reports was knowing and voluntary prior to accepting Petitioner's waiver of a jury trial:**

The Missouri appellate court denied Petitioner post-conviction relief on the issue of Ground 1 without explanation and found that the motion court's determination in this regard was not clearly erroneous. <u>See</u> Resp. Ex. J. Upon addressing this issue the motion court found as follows:

> Movant contends that when he waived his right to a jury trial and stipulated to submit his case on the basis of the police reports that the trial court failed to determine whether movant's stipulation to submit his case on police reports or his

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

waiver of his sixth amendment rights was knowing and voluntary. Movant complains that he would not have entered into the stipulation if he had known that the State would not produce the knife and necktie allegedly used in the crime. Movant argues that he was prejudiced by the trial court's failure to determine whether his stipulation to submit his case on the basis of the police reports was knowing and voluntary.

This allegation is refuted by the record, without merit and denied. As acknowledged by movant, stipulated facts do not constitute a guilty plea requiring compliance with Rule 24.02. State v. Fay, 939 S.W.2d 20, 23 (Mo. App. E.D. 1997); State v. Scott, 916 S.W.2d 309 (Mo. App. E.D. 1995). Movant further acknowledges that a stipulation to submit a criminal case on the basis of police reports or depositions constitutes a waiver of a criminal defendant's Sixth Amendment rights to confrontation, cross-examination, and summation. Carr v. State, 829 S.W.2d 101, 102 (Mo. App. S.D. 1992). Movant argues that he must have been acting intelligently, knowingly and voluntarily, but that the record only indicates he intended to waive his Sixth Amendment rights, not whether he was acting knowingly and voluntarily in waiving them, and that the record does not reflect that he fully understood the consequence of the State not having to produce any evidence, testimony, exhibits or statements.

Rule 27.01 provides that a defendant may with the assent of the court, waive a trial by jury and submit the trial of any criminal case to the court. Such waiver by the defendant must be made in open court and entered of record. Here the defendant/movant replied upon inquiry by the court that he did not wish to have a jury trial, that he understood he had a right to have a jury trial, at which he had the right to an attorney, that the jury would be advised of his presumption of innocence, that the State had the burden of proof, that a unanimous verdict was required, that before a jury the State would have to bring in witnesses to testify and his attorney would have the right to cross examine, that he would have the right to present evidence and witnesses, that it would be his decision whether to testify, and if he so chose the jury might be advised of his prior convictions, but which if requested the jury would be told to disregard for purposes of guilt in this case. Movant responded that he had no questions of the Court and stated repeatedly it was his wish to proceed without a jury and that he was willing to sign a memorandum saying he would give up and waive his right to a jury. Thereafter, the Court addressed the issue of whether there would be evidentiary or testimonial presentation of evidence. Movant responded upon inquiry by the Court that he wanted to submit the case on the police reports, and that he understood that even though he gave up his right to a jury trial he still had the right to have the court hear the witnesses against him, have his attorney present evidence on his behalf, and that he was giving up his right to testify. The Court also made additional inquiry to confirm he was making these decisions knowingly and voluntarily. Movant testified that he had a tenth grade education, that he did not have

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

any sort of physical or mental health problems, was not under the influence of any drugs, alcohol or narcotics, and was not under a doctor's care. Movant further testified that he understood the charges, that his attorney explained the charge, sentencing and potential punishments, that there were no witnesses he wanted his attorney to call, he had not given the names of any witnesses to his attorney, he had sufficient time to discuss his decision, that his attorney explained his legal rights with respect to trial, answered his questions, that there was nothing he asked her to do that she did not, and that he had no criticisms or complaints against his attorney.

Movant responded upon repeated inquiries by this Court that he wanted the determination based solely on the police report. The sufficiency of the evidence was raised and upheld on appeal. Additionally, movant has not alleged a factual basis to find his motion allegations caused him prejudice. Accordingly, this allegation is denied.

Resp. Ex. G at 30-32.

Pursuant to Williams, this court will consider federal law applicable to the issue raised in Petitioner's Ground 1. First, however, the court notes that the motion court's description of what transpired prior to Petitioner waiving his right to a jury trial and prior to consenting to the submission of his case on the police reports is consistent with the transcript of the proceedings. Resp. Ex. A at 4-13. The United States Supreme Court, in Adams v. United States ex rel McCann, 317 U.S. 269, 275-78 (1942), held as follows, in relevant part, in regard to the wavier of the right to a jury trial:

The short of the matter is that an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel. There is nothing in the Constitution to prevent an accused from choosing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the guidance of his own wisdom and not that of a lawyer. ...

Certain safeguards are essential to criminal justice. The court must be uncoerced, Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543, and it must have no interest other than the pursuit of justice, Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749, 50 A.L.R. 1243. The accused must have ample opportunity to meet the

19

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

case of the prosecution. To that end, the Sixth Amendment of the Constitution abolished the rigors of the common law by affording one charged with crime the assistance of counsel for his defense, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. ... The relation of trial by jury to civil rights--especially in criminal cases--is fully revealed by the history which gave rise to the provisions of the Constitution which guarantee that right. Article III, Section 2, Clause 3; Sixth Amendment; Seventh Amendment. That history is succinctly summarized in the Declaration of Independence in which complaint was made that the Colonies were deprived 'in many cases, of the benefits of Trial by Jury'. But procedural devices rooted in experience were written into the Bill of Rights not as abstract rubrics in an elegant code but in order to assure fairness and justice before any person could be deprived of 'life, liberty, or property'. ...

We have already held that one charged with a serious federal crime may dispense with his Constitutional right to jury trial, where this action is taken with his express, intelligent consent, where the Government also consents, and where such action is approved by the responsible judgment of the trial court. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263. And whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case. The less rigorous enforcement of the rules of evidence, the greater informality in trial procedure--these are not the only advantages that the absence of a jury may afford to a layman who prefers to make his own defense. In a variety of subtle ways trial by jury may be restrictive of a layman's opportunities to present his case as freely as he wishes. And since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury.

See also Boykin v. Alabama, 395 U.S. 238, 243 n.5 (1969) (holding that for a waiver of a constitutional right "to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege'") (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Additionally, Fed. R. Crim. P. 23 provides that:

(a) Jury Trial. If the defendant is entitled to a jury trial, the trial must be by jury unless:

(1) the defendant waives a jury trial in writing;

(2) the government consents; and

20

(3) the court approves.

Upon finding the issue of Ground 1 without merit the motion court considered that the trial court informed Petitioner of the rights he was waiving, that the trial court inquired into whether Petitioner was making his decision knowingly and voluntarily, that Petitioner indicated he understood the rights he was waiving, and that the record refuted Petitioner's claim to the contrary. This court notes that prior to accepting Petitioner's waiver of a jury trial the trial court questioned Petitioner extensively. In particular, the trial court asked Petitioner if he had discussed this matter with his attorney and whether Petitioner understood that the jury would consist of twelve people who are citizens of the community. Resp. Ex. A at 4. The court further explained to Petitioner that in a jury trial his counsel would question members of the venire panel to determine who would be the most suitable jurors to hear Petitioner's case. Resp. Ex. A at 7. The transcript of the proceedings indicates that Petitioner responded to the court that he understood what rights he was waiving. Although the record before this court does not indicate whether Petitioner actually signed a memorandum waiving his right to a jury trial, Petitioner testified prior to the trial court's accepting his waiver that he was willing to sign a memorandum acknowledging that he was waiving his right to a jury trial. Resp. Ex. A at 8. The court finds, therefore, upon considering the issue raised by Petitioner in Ground 1 that the State court's decision was not contrary to federal law and was a reasonable application of federal law. See Fed. R. Crim. P. 23; Boykin, 395 U.S. at 243 n.5; Adams, 317 U.S. at 275-78. Additionally, the State court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 1 is without merit and that it should be dismissed.

**Ground 2- Petitioner was denied due process because the trial court failed to establish beyond a reasonable doubt that Petitioner committed the crime of attempted statutory sodomy in the first degree by unzipping the pants of Q.B.:**

21

Upon addressing the issue of Petitioner's Ground 2 and affirming the judgment of the trial court finding Petitioner guilty of attempted statutory sodomy, the Missouri appellate court stated, in relevant part, as follows:

> [Petitioner] claims that the State failed to establish [he] took a substantial step toward committing statutory sodomy in that the State did not establish that [Petitioner] unzipped the pants worn by Q.B.

> The sufficiency of the evidence in a court-tried criminal case is determined by the same standard as a jury-tried case. State v. Lanier, 985 S.W.2d 377. 379 (Mo. App. E.D. 1999). In considering whether the evidence is sufficient to support the jury's verdict, we must look to elements of the crime and consider each in turn to determine whether a reasonable juror could find each of the elements beyond a reasonable doubt. State v. Grimm, 854 S.W.2d 4-3, 405 (Mo. banc 1993) citing State v. Dulany, 781 S.W.2d 52, 55 (Mo. banc 1989). Therefore, under the Dulany standard, we are required to take the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence, disregarding all contrary inferences. Id.

> A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old. Section 566.062.1 RSMo (1994). Deviate sexual intercourse is defined as "any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however, slight, of the male or female sex organ or the anus by a finger, instrument, or object done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1). In this case, since [Petitioner] was charged with attempted statutory sodomy, the State must also prove [Petitioner] acted with the purpose of committing that offense when he does any act which is a substantial step towards the commission of the offense. Section 564.011.1. A "substantial step" is conduct that is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Id.

> [Petitioner] argues that the ambiguity in the police report as to whose pants were unzipped fails to establish beyond a reasonable doubt that he attempted to have deviate sexual intercourse with Q.B. [Petitioner] argues the evidence does not establish he unzipped Q.B.'s pants because Q.B. merely stated he heard pants being unzipped and did not specify whose pants. The State argues that whose pants were unzipped is irrelevant because a reasonable inference from the evidence is that Q.B.'s pants were unzipped and that [Petitioner] took a substantial step toward engaging in

22

deviate sexual intercourse. Moreover, the State argues that even if [Petitioner] unzipped his own pants, the totality of the circumstances surrounding the incident also raises the reasonable inference that [Petitioner] took a substantial step toward engaging in deviate sexual intercourse.

The intent of the accused in an attempt case rarely is susceptible of direct proof; the circumstances of each case must be closely examined. <u>State v. Kendus</u>, 904 S.W.2d 41, 43 (Mo. App. S.D. 1995). ...

When closely examining the circumstance as a whole, we find that the evidence in this case was more than sufficient to support [Petitioner's] conviction. The evidence presented in this case is more egregious and compelling than the evidence in <u>Kendus</u>. Here, [Petitioner] lured Q.B. into a restroom under the guise of searching for his wallet. He touched Q.B.'s buttocks through his clothing, put a knife to his throat, and threatened to kill him if he screamed. [Petitioner] took off his tie, gagged Q.B., and told him to lie down on the floor. Giving the State the benefit of all reasonable inferences and disregarding any contrary evidence, we find it reasonable that Q.B.'s statement to the police that "he heard [Petitioner] unzip his pants" meant that [Petitioner] unzipped his own pants, not Q.B.'s. It does not require an impermissible leap of logic to conclude [Petitioner] intended to commit an act of sodomy by unzipping his own pants while holding down a gagged boy by knifepoint in a restroom stall.

Resp. Ex. F at 2-5.

The Missouri appellate court further noted that "[e]ven if we determined that [Petitioner] unzipped Q.B.'s pants, that act, coupled with the other evidence presented in this case, would be sufficient to fulfill the necessary requirements to demonstrate a substantial step toward the commission of statutory sodomy." <u>Id</u>. at 5 n.2.

Pursuant to <u>Williams</u>, the court will consider federal law applicable to the issue raised by Petitioner in Ground 2. The United States Supreme Court stated in <u>Wright v. West</u>, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 284 (1992) (citing  Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  See also Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990); Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir. 1988).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." Jackson, 443 U.S. at 319.  See also Whitehead v. Dormire, 340 F.3d 532, 535 (8th Cir. 2003) (holding that a upon considering an allegation by a state prisoner that the evidence was insufficient to convict him a federal court views the evidence in the light most favorable to the prosecution and resolves all conflicting inferences in the state's favor, as directed by Jackson); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing Jackson, 443 U.S. at 319, 321, 324; Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir.2000)).  The United States Supreme Court has further held that in evaluating the sufficiency of the evidence to sustain a verdict, circumstantial evidence is not to be treated differently from direct evidence.  See Holland v. United States, 348 U.S. 121, 140 (1954).

Also, under federal law the standard applicable to a determination of the sufficiency of the evidence in a non-jury trial "is the same as that used to review a determination made by a jury." United States v. Ott, 741 F.2d 226, 228 (8th Cir. 1984) (citing United States v. Cady, 567 F.2d 771, 774 (8th Cir.1977)).  This standard is identical to the standard applied by the Missouri appellate court in Petitioner's case.

Upon concluding that there was sufficient evidence that Petitioner committed statutory

24

sodomy in the first degree, the Missouri appellate court considered the elements of this crime and the contents of the police report and concluded that the evidence was sufficient to convict Petitioner as charged. As such, this court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 2 is a reasonable interpretation of federal law and that it is not contrary to federal law. See Wright, 505 U.S. at 284. The court further finds that the Missouri appellate court's decision in regard to the issue raised in Petitioner's Ground 2 is a reasonable application of federal law to the facts of Petitioner's case.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Grounds 1 and 2 are not timely filed. In the alternative, the court finds that Petitioner's Grounds 1 and 2 are without merit. The court further finds that Petitioner has procedurally defaulted Grounds 3-9. The court finds, therefore, that Petitioner's § 2254 Petition should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; [4]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.3d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  22nd  day of  June, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

PDF created with FinePrint pdfFactory trial version [www.pdffactory.com](www.pdffactory.com)